**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIRIN MOVAHED RAKOCEVIC,<br><br>                                Plaintiff,<br><br>                     v.<br><br>KOUTSOUDAKIS & IAKOVOU<br>LAW GROUP, PLLC, ANDREAS<br>KOUTSOUDAKIS individually, and<br>CONTINENTAL CASUALTY<br>COMPANY d/b/a CNA,<br><br><br>                         Defendants | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

       Plaintiff, Shirin Movahed Rakocevic ("Rakocevic" or "Plaintiff") by and through its attorneys, Law Office of Shirin Movahed Rakocevic, PLLC, files this Complaint against Defendants Koutsoudakis & Iakovou Law Group d/b/a KI Legal ("KI Legal") Andreas Koutsoudakis, Esq., ("Koutsoudakis") and Continental Casualty Company, d/b/a CNA (collectively hereinafter referred to as "Defendants"), and alleges as follows:

<u>**PARTIES**</u>

1. The Plaintiff, Shirin Movahed Rakocevic ("Rakocevic" or "Plaintiff") is an individual residing in New Jersey.

2. The Defendant, Koutsoudakis and Iakovou Law Group d/b/a KI Legal ("KI Legal"), is a legal firm with its principal place of business at 40 Wall Street, 49th Floor New York, NY 10005.

3. The Defendant Andreas Koutsoudakis is an individual and principal of Defendant KI Legal with is principal place of business at 40 Wall Street, 49th Floor, New York, NY 10005.

4.  The Defendant, Continental Casualty Company, d/b/a CNA ("CAN"), is an insurance provider, more specifically CNA is provider of lawyer's professional liability policy to KI Legal and is authorized to do business in the State of New York.

## JURISDICTION AND VENUE

5.  This action arises under the laws of the United States and falls within the jurisdiction of this Court pursuant to 28 U.S.C §1332 (Diversity of citizenship) and 28 U.S.C §1331 (Federal question jurisdiction).

6.  Venue is proper in this district under 28 U.S.C §1391(b) as the Defendants reside and conduct business within this district, and the events giving rise to this cause of action occurred within this district.

## FACTUAL ALLEGATIONS

7.  This case arises out of the wrongful actions of Defendants concerning defamatory statements made to third parties and to Plaintiff's clients that have caused substantial harm to Plaintiff as well as Defendants' tortious interference with Plaintiff's business relationships, infringement for the unauthorized use of Plaintiff's name and likeness on Defendant's website and finally for deceptive and false attorney advertising.

8.  Plaintiff is an accomplished attorney and trusted strategic business advisor.  Over the course of her 20+ year career, Rakocevic has built an exceptional reputation for providing high quality legal and business advisory services to her business clients, many of whom have followed her throughout her various firm transitions and partnerships.  Rakocevic also serves on the board of several private companies, in her role as a business advisor as well as leveraging the relationships she has fostered over 20 years to align strategic partners and bring in additional investors to support their growth.  Rakocevic is also a keynote speaker

at universities, cultural institutions, and trade associations, and has been recognized in her own community for her exceptional service as a recipient of the Mayoral Light Awards by the Mayor of South Hamptons, New York, and the Mayor of Hoboken, New Jersey, in addition to be named a New York rising star and rated as a SuperLawyer® by Thomson Reuters since 2016.

9. Rakocevic started her own law practice at the beginning of 2020 and quickly built a formidable law practice helping start up and emerging companies with their corporate legal needs.

10. In or around December 2021, one of the partners at KI Legal, Michael Iakovou, reached out to Rakocevic on LinkedIn to inquire about having her join their firm as a partner. After several meetings with the partners, and with the understanding that KI Legal would be able to take care of her clients and their growing business needs while allowing Rakocevic to focus on business development, they entered into an agreement and Rakocevic merged her practice into KI Legal in January 2022. From January 2022 through June 2022, Plaintiff was employed as the only female partner with KI Legal, and thereafter worked as Of-Counsel from July 2022 through the beginning of November 2022.

11. As part of her transition to Of-Counsel, Rakocevic was able to take back the clients that she brought over to KI Legal, which included transferring over the files as well as the retainers that were held in trust with KI Legal.

12. Unfortunately, the relationship did not work out for multiple reasons, including the fact that Rakocevic was not able to hand off her business clients to the attorneys at KI Legal, as most had little to no experience handling her business clients' legal needs. This caused

Rakocevic to spend more time training other attorneys and less time working on business development opportunities.

13. In addition, some of Rakocevic's clients were expressing dissatisfaction at receiving larger invoices than they were used to getting from Rakocevic for legal services that were not better than they had previously received.

14. In fact, one corporate client of Rakocevic was so upset with the billing practices of KI Legal that he removed his account from KI Legal and ended his relationship with Rakocevic.

15. As a result, the parties amicably ended their contractual relationship in the beginning of November 2022 and an additional client she had gained while at the firm followed her, which is believed to have infuriated Koutsoudakis.

16. During Plaintiff's transition out of KI Legal beginning in July 2022, she experienced difficulty in obtaining her client's trust fund retainers that were transferred over to her practice, as it took over 5 months to finally send Plaintiff her clients' remaining trust retainers. This undue delay was without regard to the fact that Plaintiff had been working on her client's files for over 5 months without being compensated as KI Legal was unreasonably withholding the client's trust funds causing her to suffer financial distress as a result of not getting paid on these matters for 5 months. From July 2022 through April 2023, Plaintiff had been in correspondence with Defendant KI Legal regarding the transfer of her client's files and trust retainers.

17. One such example, is after Rakocevic separated from KI Legal, one of her clients, namely Canadian Rights Watch, followed Rakocevic to her new firm.

18. KI Legal then failed after multiple requests from Canadian Rights Watch to release the remainder of their retainer to Rakocevic's new firm. See **Exhibit A**- Declaration of George Roche, ¶ 6 -8.

19. Furthermore, KI Legal attempted to use Rakocevic as a scapegoat for their conduct by insinuating that Rakocevic had already received payment for the client's file.

20. Indeed, Rakocevic formally separated from KI Legal in early November 2022, however it was only on or about April 6, 2023 that KI Legal agreed to release the balance of the retainer to Rakocevic for this client. See **Exh. A**. ¶¶14-19. This only occurred after the client, Canadian Rights Watch, reached out on multiple occasions and requested the release of the retainer for the work that was not even completed by KI Legal, as KI Legal lacked the experience needed to file the trademark application for Canadian Rights Watch. See **Exh. A**, ¶ 20.

21. Before the events that gave rise to this litigation, Rakocevic enjoyed a very good reputation in the business and legal community as a trusted advisor.

22. However, on or about December 16, 2022, Defendants engaged in making defamatory statements to a third party, namely, Jaclyn Milford ("Milford"), a former business associate of Rakocevic, in response to false allegations that were made by Milford to Defendants.

23. As a result of Defendants' defamatory statements, Milford was fueled into filing a complaint against Rakocevic which has caused substantial financial and emotional harm, forcing Plaintiff to defend herself from a frivolous lawsuit filed by Milford and her counsel, Kent Frazer, Esq., based on such defamatory statements made by Defendants. Prior to Milford's correspondence with Defendants, Milford had negotiated a settlement with Plaintiff over a business dispute unrelated to her practice of law.

24. Despite not knowing any of the facts surrounding Rakocevic's relationship with Milford or conducting any due diligence beforehand to confirm the truth or veracity of the allegations being made against Rakocevic, Defendants stated in the December 16th email to Milford that she had "compelling grounds for filing a complaint…and we would cooperate with them without hesitation." (Emphasis added).

25. Defendants went on to further defame Rakocevic by falsely stating to Milford and her attorney that she was terminated from her position as a partner with KI Legal, when the truth of the matter was that Rakocevic and KI Legal had mutually agreed to part ways as the arrangement was not suitable or favorable to Rakocevic or her clients who had raised issues about the billing practices of KI Legal and the lack of quality in the services rendered.  In fact, Rakocevic lost a client as a result of KI Legal's conduct in handling their matter.

26. Defendants then went on to further defame Rakocevic by contacting her clients directly and repeating the false allegations made against her by Milford by telling her clients that she had defrauded a client out of her multi-million-dollar company by surreptitiously adding herself on as a director and then conducting a hostile takeover of Milford's company and further stating that they should be concerned if she is working on their corporate matters, which as a corporate business attorney that was Rakocevic's main practice area.

27. Specifically, on one occasion, Koutsoudakis called Rakocevic's client repeating these false allegations and defamed Rakocevic and then warned the client about potential interference by Rakocevic into this client's business, stating that Rakocevic may even draft resolutions to unlawfully seize control of the client's business.

28. Another example of the appalling and unethical business practices of KI Legal occurred on a zoom meeting concerning a client of Rakocevic. This client had previously worked

with KI Legal, and when Rakocevic separated from KI Legal this client moved part of its business to Rakocevic's firm. The zoom meeting was intended to be between the client, Rakocevic as the counsel of record, and the client's marketing team. However, at the time when the meeting was scheduled, a calendar invite was erroneously sent to Rakocevic's old email address at KI Legal.

29. Unbeknownst to Rakocevic at the time, KI Legal was surreptitiously monitoring Rakocevic's email, and accepted the zoom meeting invite on her behalf instead of forwarding the email to Rakocevic or advising the client that they received this email in error as KI Legal did not represent the client's new business venture in any manner.

30. On or about April 26, 2023, a member of the KI Legal team clandestinely joined the zoom call, failed to disclose their identity, even when asked, and covertly transcribed the meeting without the client's consent or knowledge.

31. KI Legal and Koutsoudakis have taken several opportunities to harm Rakocevic, with Koutsoudakis personally and on behalf of KI Legal making defamatory statements about Rakocevic, as well as tortiously interfering in Rakocevic's business.

32. Despite demands, it is unknown at this time how many clients and/or business associates KI Legal and Koutsoudakis have contacted and spread these defamatory statements about Rakocevic, causing Rakocevic substantial harm to her reputation, as well as causing her to suffer both financially and emotionally.

33. Defendants, as lawyers and a former employer of the Plaintiff, had a duty to exercise due diligence and fact-checking before fabricating and disseminating such false and damaging statements about her. Moreover, Defendants acted with malice and reckless disregard for

7

the truth, by failing to verify the accuracy of the information and disregarding the potential

harm caused by spreading such false information about Plaintiff.

34.  Furthermore, Defendants have benefited from utilizing the Plaintiff's name and likeness

on their personal injury website without Plaintiff's consent or authorization.  This

unauthorized use of the Plaintiff's name and likeness on their website falsely implies an

ongoing association between the Plaintiff and Defendant's practice, despite having ceased

her contractual relationship with Defendant at the beginning of November 2022, prior to

the website even being published. See attached at **Exhibit B**.

35.  In addition, on KI Legal's personal injury website, it falsely stated that Rakocevic was a

member of their personal injury team, when in fact Rakocevic has never practiced personal

injury law.  See **Exhibit B**.

36.  Furthermore, KI Legal's unauthorized use of Rakocevic's name and likeness, coupled with

the dissemination of false advertising suggesting that Rakocevic was part of KI Legal's

personal injury team, persisted until on or about May of 2023 when Rakocevic discovered

this infringement.

37.  On May 1, 2023, Plaintiff delivered a letter to KI Legal expressing her disappointment

and concern about confidential and private information that was shared by KI Legal

regarding her previous employment relationship with third parties. Defendants,

however, failed to acknowledge or respond to this correspondence.

38.  Thereafter, Plaintiff's counsel, Samantha Tesser Haimo Esq., who was retained to

defend Rakocevic in her litigation with Milford, delivered a Demand Letter ("Letter") on

May 12, 2023, to follow up on this lack of response from Defendants and to notify

Defendants that Plaintiff's counsel was in possession of clear documentary evidence

8

proving that Defendants purposefully defamed and maligned Plaintiff to Milford. The May 12th Letter also made a formal request for Defendants' Insurance Documents under Florida Statute §627.4137, which requested that KI Legal disclose the name(s) of all of errors and omissions, general liability, excess, surplus and umbrella insurers to the Plaintiff and provide the Plaintiff with copies of this information as well. The Florida statute provided that the aforementioned information be delivered within 30 days of receipt. See attached at **Exhibit C.**

39. The May 12th Letter also demanded that Defendants preserve all electronic media which is relevant to any all correspondence related to Plaintiff and to ensure that any such communication is safeguarded from destruction or deletion. See **Exhibit C.**

40. Defendants' refusal to timely adhere to the Statute in question, Florida Statute §627.4137, represents a blatant violation of the law and to their duty to abide by their Ethical Code of Conduct.

41. Defendants repeated defamatory statements made against Plaintiff by fabricating and disseminating false statements against her, with the malicious intent to do her harm, is also in egregious violation of Rule 8.4(b) and 8.4(c) of the New York Rules of Professional Conduct which bars a lawyer from engaging in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness, or fitness as a lawyer and from engaging in conduct that involves dishonesty, fraud, deceit, or misrepresentation, respectively.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Defamation)

1. Plaintiff realleges and incorporates paragraph 1- 41 of the Factual Allegations as if fully set forth herein.

2. The Defendants' false and defamatory statements constitute defamation under New York law, as they were published and disseminated to third parties, damaging the Plaintiff's reputation, and causing her harm within her professional community and beyond.

3. The defamatory statements were made with knowledge of their falsity or with reckless disregard for their truth, constituting actual malice.

4. As a direct and proximate result of the Defendants' defamatory statements, the Plaintiff has suffered and continues to suffer harm, including damage to her professional reputation, emotional distress, and potential loss of business opportunities.

5. By Reason of the foregoing, the Plaintiff has suffered damages due to the defamatory statements made against her.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Defamation Per Se)

1. Plaintiff realleges and incorporates paragraphs 1-41 of the Factual Allegations as if fully set forth herein.

2. The Defendants' false and defamatory statements constitute defamation per se under New York law, as they impute the Plaintiff's professional integrity and falsely claim inappropriate behavior incompatible with the proper conduct of an attorney.

3. The defamatory statements are of such nature that they are inherently harmful, making proof of damages unnecessary.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Infringement)

1. Plaintiff realleges and incorporates paragraph 1-41 of the Factual Allegations as if fully set forth herein.

2. The Defendant's unauthorized use of the Plaintiff's name and likeness on their personal injury website constitutes infringement of the Plaintiff's rights of publicity and privacy.

3. The Defendant's use of the Plaintiff's name and likeness falsely implies an ongoing association between the Plaintiff and the Defendant's practice, causing confusion and damaging the Plaintiff's personal and professional reputation.

4. The Defendant's unauthorized use of the Plaintiff's name and likeness is a violation of the Plaintiff's right to control the commercial use of her identity.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Tortious Interference with Prospective Economic Advantage)**

1. Plaintiff repeats and realleges the allegations contained in the foregoing Paragraphs 1-41 of the Factual Allegations as if full set forth herein.

2. At all times relevant to this action, Defendants were aware that Plaintiff had business relationships with specifically identifiable clients and business associates, as well that Plaintiff and Milford had been formerly engaged in a business relationship together, despite not knowing any of the facts surrounding Rakocevic's relationship with Milford.

3. As a result of Defendants' defamatory statements to Rakocevic's clients, KI Legal and Koutsoudakis deliberately interfered with Rakocevic's business relationships. The full extent of this interference is not yet fully known.

4. Defendants knowingly, intentionally and unjustifiably interfered with Rakocevic's clients and business relationships and interfered with that relationship by making false and defamatory statements.

5. Defendants encouraged Milford to file a complaint against Rakocevic which has caused substantial financial and emotional harm. Defendants stand to gain economically by agreeing to cooperate with Milford in her baseless claims against the Plaintiff.

6. As a result of this tortious interference, Plaintiff suffered substantial financial harm to her law practice's professional reputation and economic interests.

7. By reason of the foregoing, Plaintiff suffered damages, including financial losses and harm to her professional standing.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendants, as follows:

A. Compensatory damages for each Cause of Action, including Defamation, Defamation per se, Infringement, and Tortious Interference with Prospective Economic Advantage, in an amount to be determined at trial, but in no event less than $10,000,000;

B. Punitive damages for each Cause of Action, Defamation, Defamation Per Se, Infringement, and Tortious Interference with Prospective Economic Advantage, in an amount to be determined at trial, but in no event less than $10,000,000;

C. Injunctive relief prohibiting the Defendants from further using the Plaintiff's name and likeness without authorization.

D. Reasonable attorney's fees and costs incurred in prosecuting this action; and

E.   Such other and further relief as the Court deems just and proper.

Plaintiff demands a jury by trial on all issues so triable.

Dated: New York, New York
       April 4, 2024

**LAW  OFFICE  OF  SHIRIN  MOVAHED
RAKOCEVIC PLLC**

By: <u>/s/ Shirin Movahed Rakocevic</u>
Shirin Movahed Rakocevic Esq.
Sonia Zobdeh, Esq.
1350 Avenue of the Americas, 2nd Fl-1090
New York, New York 10019
Office: 917-633-5850
Fax:    917-341-0419
Direct:   917-341-5331

*Attorneys for Plaintiff Shirin Movahed Rakocevic*